EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AGAPITO RUIZ RODRÍGUEZ, acusado y apelante.

Número 16181.

*Sometido:* 12 de febrero de 1957. *Resuelto:* 27 de mayo de 1957.

---

*Luis A. Archilla Laugier,* abogado del apelante; *Honorable Secretario de Justicia Interino J. B. Fernández Badillo, y Arturo Estrella y William Fred Santiago, Fiscal y Fiscal Auxiliar, respectivamente, del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

Agapito Ruiz Rodríguez fué procesado en el Tribunal Superior, Sala de Humacao, por un delito de asesinato. La causa se vió ante jurado. Este le declaró culpable de asesinato en segundo grado. El acusado presentó moción solicitando un nuevo juicio, que fué denegado. La corte a quo le sentenció entonces a la pena de diez a veinticinco años de presidio. Apeló de la sentencia, así como de la resolución denegando el nuevo juicio.

■ Sostiene en el primer señalamiento que la Sala de instancia incidió en error al declarar sin lugar "siete mociones de "mistrial" presentadas . . . por la defensa, fundadas . . . en conducta impropia del Fiscal que causó perjuicio en la mente del jurado, por lo que el juicio no fué . . . justo e imparcial". Alega el apelante que el representante del ministerio público, en siete ocasiones, mientras informaba al jurado, llevó a su conocimiento "elementos que no estaban sostenidos por la prueba", e hizo manifestaciones en descrédito de un perito cuya capacidad como tal había sido admitida por El Pueblo. Aun cuando es cierto que el fiscal se excedió en su informe haciendo referencia a hechos sobre los cuales no se había presentado evidencia, y que en una ocasión expresó que el perito de la defensa era un testigo profesional, aseveración que tampoco estaba sostenida por la prueba, somos de opinión que la corte sentenciadora no incurrió en error al declarar sin lugar las mociones de "mistrial". Hemos re-

suelto que no procede la concesión de una moción de esa naturaleza, "si no se demuestra que el acusado ha sufrido un daño positivo o se han perjudicado sus derechos sustanciales o a menos que sea evidente que no ha habido un juicio justo e imparcial. *Avery* v. *State*, 70 S.E.2d 716; *State* v. *Frazer*, 248 S.W.2d 645; *Johnson* v. *State*, 72 S.E.2d 291", *Pueblo* v. *Díaz*, 74 D.P.R. 375. El tribunal de instancia dió al jurado, siempre que fué necesario, las instrucciones adecuadas para proteger al apelante de las manifestaciones del representante de El Pueblo, objetadas por aquél. No encontramos en los autos base alguna para concluir que tales manifestaciones perjudicaran los derechos sustanciales del acusado o que éste no tuviera un juicio justo e imparcial.

Se alega en el segundo señalamiento que se equivocó la corte a quo al declarar sin lugar la moción de nuevo juicio "basada en el descubrimiento de nueva evidencia que obraba en poder del Fiscal y del hecho de que los jurados, mientras actuaban como tales tomaron bebidas embriagantes, lo que les impidió recibir la evidencia y juzgar la causa que estaba pendiente de manera correcta y concienzuda tal y como lo ordena la Ley". No tiene mérito el primer fundamento en que descansa el señalamiento. Tampoco lo tiene el segundo. En la vista de la moción sobre nuevo juicio declaró el Presidente del Jurado que juzgó al acusado. Testificó lo siguiente, interrogado por el abogado defensor: "P.— . . . . . ¿Dígame, el día 17 de enero de 1956, fecha cuando empezó el juicio, almorzó en algún sitio el jurado en ese caso? R.—Sí, señor, cómo no. P.—¿En qué sitio almorzó? R.—En El Lirio, creo que se llama el restaurant ese. P.—El restaurant. ¿Dónde? R.—Aquí en Humacao. P.—¿Ud. me puede decir si ese día, el que almorzó, qué fué lo que almorzó? R.—Cada uno pidió lo que quiso allí. P.—¿Tomaron algo además del almuerzo? R.—Sí. P.—¿Qué tomaron? R.—Siempre que el Jurado va a almorzar, le sirven a uno como cortesía una botellita de . . . P.—¿Pero ese día a que yo me refiero, ese día 17 de enero, qué sirvieron? R.—¿Para tomar? P.—Para tomar. R.—Yo

recuerdo que allí se sirvió una botella de . . . P.—¿Botella de qué? R.—De brandy creo. P.—¿Qué sucedió con esa botella de brandy que se sirvió allí? R.—Yo no sé si se la bebieron o no. P.—¿Pero tomaron de esa botella? R.—Tomaron. P.—¿Y eso fué cuándo? R.—El día del juicio. P.—¿El día 17? R.—El primer día del juicio. LA CORTE: ¿El primer día del juicio? R.—El primer día del juicio. LA DEFENSA: El primer día del juicio. LA CORTE: El primer día del juicio. LA DEFENSA: ¿El segundo día, o sea, el 18, almorzaron en ese mismo sitio? —R.—No recuerdo bien, si fué en ese mismo sitio o no fué, pero en ese segundo día también se sirvió una botellita. P.—¿Botella de qué? LA CORTE: ¿Botella de qué? R.—Una canequita de ron Superior, que se yo qué. LA DEFENSA: ¿Qué hicieron con esa caneca los Sres. Jurados? R.—Sí, señor. P.—¿Tomaron? R.—Sí." Esa fué toda la prueba que se presentó a la corte a quo para que ordenara la celebración de un nuevo juicio, por la razón de que los jurados que conocieron del proceso tomaron licor en el transcurso del mismo.

Todas las cortes condenan, como lo asevera el apelante, "El uso de bebidas embriagantes por los jurados, mientras están en el desempeño de sus obligaciones . . .". Es, sin duda, muy reprobable, y por serlo, también lo condena y censura este Tribunal, que miembros de un jurado ingieran licor, aunque sea en dosis o cantidades pequeñas, cuando se encuentra en el cumplimiento de sus funciones, y ello no debe ser permitido.(¹) Sin embargo, no estamos de acuerdo con que procede, como se resuelve en algunas decisiones, las menos, el anular un veredicto de culpabilidad, por el solo hecho de que uno o más jurados hayan usado bebidas intoxicantes, sin tomar en consideración la cantidad o su efecto. La doctrina

---

(¹) A pesar de que la corte a quo denegó justificadamente la moción de nuevo juicio, claramente hizo constar que ". . . el Jurado cuando está trabajando debe estar fuera, debe no tomar licor alguno aunque sea un aperitivo . . ."

Nos parece obvio que los alguaciles no deben permitir que a los jurados se les sirva ningún licor, cuando están en el cumplimiento de sus deberes.

preponderante, incuestionablemente correcta, es que aun cuando el que uno o más jurados tomen bebidas alcohólicas mientras conocen de un proceso, es altamente criticable, el hecho de que lo hagan no es de por sí motivo para dejar sin efecto el veredicto y ordenar la celebración de un nuevo juicio, a menos que aparezca que el uso de tales bebidas produjo consecuencias perjudiciales para el acusado, que el jurado o jurados actuaron bajo la influencia del licor, que éste en alguna forma afectó el veredicto, o que fué suplido por una parte interesada en el resultado de la causa. *State* v. *Baber*, 41 Am. Rep. 314 (Mo.) ; *Jones* v. *People*, 45 Am. Rep. 526 (Col.) ; *State* v. *West*, 33 Am. Rep. 506 (Mo.) ; *Burgess* v. *Territory*, 19 Pac. 558 (Mont.) ; *State* v. *Bruce*, 30 Am. Rep. 403 (Iowa) ; *People* v. *Gray*, 61 Cal. 164; *Parry* v. *Bailey*, 12 Kan. 539; *State* v. *Tatlow, Sr.*, 8 Pac. 267 (Kan.) ; *Underwood* v. *Old Colony St. Ry. Co.*, 76 Atl. 766 (R.I.).

Aplicando al caso de autos la norma a que acabamos de aludir, es evidente que el tribunal sentenciador no incurrió en error alguno al negarse a conceder un nuevo juicio por el fundamento apuntado. Todo lo que revela la evidencia que se le presentó a dicho tribunal fué, como se ha visto, que el día en que comenzó el juicio, a la hora del almuerzo, se sirvió al jurado como cortesía del restaurante en que almorzaron, una botella de brandy, de la que tomaron miembros de dicho jurado—estaba integrado por trece personas—y que al día siguiente, a la misma hora, también bebieron de una caneca de ron. No hay prueba de que ingirieran todo el contenido de la botella o de la caneca. Tampoco hay evidencia de que alguno o algunos de los jurados estuvieran en momento alguno bajo la influencia del licor, ni que por haber tomado bebidas embriagantes en las dos ocasiones mencionadas sufriera perjuicio el acusado, o que ello afectara impropiamente el vere- dicto. Aunque, repetimos, que condenamos el uso por el jurado de bebidas alcohólicas cuando está desempeñando sus funciones, y reiteramos que ello es en verdad censurable, resulta obvio que sobre la base de la prueba que tuvo la corte

a quo, no podía ésta llegar a una conclusión distinta que la de no reconocer mérito a la contención del apelante, que reitera ante nos, al efecto de que los miembros del jurado "tomaron bebidas embriagantes, *lo que les impidió recibir la evidencia y juzgar la causa que estaba pendiente de manera correcta y concienzuda . . .* " (²)    (Bastardillas nuestras.)

▬ En el tercer señalamiento se asevera que erró el tribunal sentenciador "al determinar, como cuestión de derecho, que la confesión del acusado fué hecha voluntariamente". Dicho tribunal tuvo, a nuestro juicio, suficiente evidencia para hacer esa determinación y someter al jurado, como lo hizo, la confesión del acusado, en la que éste admitió haber hecho varios disparos a su esposa, los cuales según la acusación, causaron su muerte.

No tiene razón el apelante al sostener en el cuarto y último apuntamiento que el veredicto "es contrario a derecho y a la prueba".

*La sentencia apelada deberá ser confirmada.*

El Juez Asociado Sr. Marrero no intervino.

▬▬▬

---

(²) El art. 303 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 883, dispone que "Cuando se hubiere dictado veredicto contra el acusado, el tribunal podrá, al solicitarlo éste, conceder la celebración de nuevo juicio, pero sólo en los casos siguientes:   .   .   .   .   .   .   .   . .   .   .   .   .   .   .   . 3.—Cuando los miembros del jurado . . . . . . en el modo de conducirse hubieren cometido alguna falta que impidiere resolver la causa de una manera correcta y concienzuda"