EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO SANTIAGO GONZÁLEZ, acusado y apelante.

*Número:* CR-68-210 *Resuelto:* 26 de marzo de 1969

*Julio García Antique,* abogado del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Adolfo Negrón Cruz, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante fue convicto por un jurado de siete infracciones al Art. 260 del Código Penal, 33 L.P.R.A. sec. 966 (Corrupción de Menores), porque cometió actos impúdicos en las personas de sus hijas Emilsa y Lourdes Santiago Figueroa de 9 y 7 años de edad, respectivamente. Fue sentenciado a cumplir concurrentemente una pena de tres a cinco años de presidio en cada caso.

Apunta ante nos que incidió el tribunal sentenciador (1) al permitir que el fiscal comentara ante el jurado prueba no admisible en evidencia y al no declarar con lugar una moción de *mistrial* solicitada por la defensa; y (2) al no instruir debidamente al jurado sobre la prueba de reputación.

1.—En el caso de autos, una vez que declararon las dos niñas perjudicadas sobre los actos que alegaban que su padre cometió con ellas, fue llamada a declarar la madre de las niñas y esposa del acusado por el ministerio público. En ausencia del jurado, la defensa se opuso a que se permitiera declarar a esta señora invocando la prohibición de ley en el sentido de que una esposa no puede declarar en contra

de su marido cuando ella no es la perjudicada. Art. 40 de la Ley de Evidencia, 32 L.P.R.A. sec. 1734. El juez declaró la objeción con lugar y no permitió que la esposa testificara en el juicio.

Informa el apelante correctamente que:

"El Ministerio Público, durante la exposición de su teoría, indicó a las damas y caballeros del jurado, que trataría de establecer la culpabilidad del acusado, sobre los hechos imputádoles mediante el testimonio de las supuestas perjudicadas en este caso, Lourdes y Emilsa Santiago Figueroa, además del testimonio de la madre de éstas Sra. Aurora Santiago Figueroa. Una vez el Ministerio Público hubo presentado el testimonio de estas niñas y haber sido éstas ampliamente contrainterrogadas por la defensa, llamó como su próximo testigo a la Sra. Aurora Santiago Figueroa, madre de las niñas y esposa legítima del acusado-apelante en este caso. La defensa solicitó que se retirara el jurado y se opuso a los designios del Ministerio Público. La defensa citó, en parte, el inciso (1) del Art. 402, [sic] de la Ley de Evidencia, 32 L.P.R.A. Sec. 1734.

. . . . . . . .

El Tribunal declaró con lugar el planteamiento de la defensa e indicó que la esposa no podría declarar en cuanto a ningún extremo esencial del caso.

Una vez terminada la prueba de la defensa, el Ministerio Público, esta vez en presencia del jurado, y a pesar del anterior 'ruling' del Tribunal, se dirigió a éste de la siguiente manera:

'Nosotros volvemos a insistir en la petición que hemos hecho al Tribunal de que se permita declarar a la esposa del señor acusado.'

El Honorable Tribunal declaró inmediatamente sin lugar la solicitud y luego, en ausencia del jurado, invitó al Ministerio Público y le concedió tiempo para que convenciera al Tribunal de la procedencia en derecho de su solicitud. Al reanudarse el proceso, cuatro días más tarde, el Ministerio Público no hizo ningún planteamiento al Tribunal respecto a su solicitud."

Al comenzar el fiscal su informe de refutación, surgió el siguiente incidente:

LCDO. FELICIANO:

Digo, hay objeción a eso, señor juez, el Fiscal no puede hacer alusión en un informe de testigos que aparezcan al dorso de la acusación y que no han declarado.

HON. JUEZ:

No se puede hacer referencia aunque haya podido declarar si no ha declarado.

HON. FISCAL:

No hemos dicho, señor juez, de lo que haya podido declarar.

"LCDO. FELICIANO:

Fíjese Su Señoría, ha hablado de por qué no ha declarado.

HON. JUEZ:

Deje que él hable.

HON. FISCAL:

. . . si no sencillamente porque hay una disposición de ley por la cual ese testigo no ha podido ser traído.

LCDO. FELICIANO:

Fíjese Su Señoría, lo que pretende el Fiscal.

HON. JUEZ:

Aún así no puede. Ya el Fiscal dijo que este es un delito que no requiere corroboración, así que hasta ahí,

Adelante, Fiscal.

HON. FISCAL:

(Continúa su informe.)

LCDO. FELICIANO:

Digo, hay objeción a eso, señor juez.

HON. JUEZ:

Con lugar la objeción.

LCDO. FELICIANO:

Yo voy a pedir un mis-trial . . .

HON. JUEZ:

Sin lugar.

LCDO. FELICIANO:

. . . por entender que el comentario del Fiscal perjudica a nuestro representado. Fíjese su Señoría que el Fiscal ha tratado de presentar cierta prueba que ha sido inadmisible, ha comentado sobre prueba inadmisible en relación a estos hechos.

Hon. Juez:

Vamos a comunicar al Jurado que la única fotografía que deben ustedes tener en consideración cuando vayan a apreciar la prueba es esta fotografía que el Fiscal tiene y que fue ofrecida y admitida en evidencia, ninguna otra.

Puede continuar el Fiscal.

Lcdo. Feliciano:

Que conste en récord la moción de mistrial en este caso.

Hon. Juez:

Está en récord."

Más tarde el juez denegó una instrucción especial al jurado solicitada por el fiscal sobre "el privilegio que impide a cónyuges declarar uno en contra del otro."

En resumen, el fiscal hizo referencia durante el juicio a la madre de las perjudicadas como testigo de cargo, en las siguientes ocasiones:

(1) En la exposición de su teoría del caso.

(2) Al aparecer dicha señora en el tribunal escoltada por el alguacil. En ese momento la defensa solicitó se retirase el jurado. Luego objetó a la testigo por estar impedida de testificar en contra de su esposo, el apelante, objeción que fue sostenida por el tribunal.

(3) Al terminar la prueba de la defensa cuando el fiscal volvió a insistir, delante del jurado que se permitiera a la esposa del apelante testificar, solicitud que el tribunal declaró sin lugar.

(4) En su informe de refutación cuando el fiscal volvió a hacer referencia a un testigo que aparece al dorso de la acusación y que no ha declarado "sencillamente porque hay una disposición de ley por la cual ese testigo no ha podido ser traído." Se sostuvo la objeción a esta referencia.

Pero no se instruyó al jurado en forma alguna que pudiese evitar que infiriese, de la última tentativa del fiscal de ofrecer el testimonio de la madre y de que le era imposible traerla debido a disposiciones de ley, que ese testi-

monio era importante, corroboraba el de las perjudicadas y tendía a confirmar la culpabilidad del apelante.

■ Es regla consagrada que es ilícito hacer referencia al jurado a prueba no admitida durante el juicio y que eso es perjudicial al acusado a menos que se cure por advertencia o instrucción del juez al jurado. Bajo determinadas circunstancias tal actuación no puede ser subsanada por instrucciones. *Pueblo* v. *Marchand Paz*, 53 D.P.R. 671, 680 (1938). Aplicando esta regla, dijimos en *Pueblo* v. *Orona Merced*, 89 D.P.R. 336 (1963), que era improcedente que el fiscal en efecto indicase al jurado que el testimonio de un testigo que no presentó por ser prueba acumulativa y, luego de puesto a disposición de la defensa ésta no utilizó, corroboraba el testimonio de otros testigos de cargo.

En *People* v. *Rosenfeld*, 183 N.E.2d 656 (N.Y. 1962), se denegó la admisión de unos rollos de cinta magnetofónica. El fiscal, luego de referirse en varias ocasiones a tales rollos, en su informe al jurado hizo referencia a que en cuanto a determinada conversación eran testigos no sólo los dos que la celebraron sino también el Minifon, o sea, la cinta obtenida a través de un aparato oculto en el cuerpo de uno de ellos y cuya admisión había sido denegada. Dijo el Tribunal de Apelaciones de Nueva York que tales actuaciones "no podían dejar de crear en el jurado la impresión de que la defensa había ocultado al jurado el testimonio de un tercer testigo que hubiera sido sumamente perjudicial al acusado."

En *People* v. *Beal*, 254 P.2d 100 (D.C.A. Cal. 1953), se dijo que la actuación de un fiscal de informar al jurado que "nunca en su vida había procesado a un hombre inocente; que no tenía la menor duda con respecto a la culpabilidad del demandado; que tenía más récords que el jurado; que tenía mucha prueba que no le era permitida traer a la consideración del jurado", constituía un error que requería la revocación de la sentencia.

En *State* v. *Montgomery*, 251 S.W.2d 654 (Mo. 1952), el apelante apuntó que en su informe al jurado el fiscal, al discutir el historial del acusado, hizo referencia (1) a un informe "F.B.I. Hoover" demostrativo de que el acusado también era culpable de "fugarse de la cárcel", hecho que no se había probado; (2) al testimonio de dos policías que no era admisible por ser prueba de referencia; y (3) a como los dos testigos de coartada pudieron obtener permiso para ver al acusado en la cárcel y que averiguó que lo lograron mintiéndoles a los funcionarios como mintieron en su testimonio ante el jurado; no habiéndose probado el anterior hecho en el juicio. El tribunal concluyó que tal actuación del fiscal era impropia y que el tribunal de instancia incidió al permitirlo por lo que revocó la sentencia y ordenó un nuevo juicio.

 Al igual que en los casos citados, concluimos que la actuación del fiscal en su turno de refutación en este caso fue impropia y sustancialmente perjudicial al apelante y que el tribunal de instancia debió dar instrucciones específicas al jurado que evitasen cualquier inferencia adversa al apelante con motivo de tal actuación. Al no hacerlo incidió el tribunal de instancia. El hecho de que el apelante no solicitase tales instrucciones no implica que las renunciase y que no pueda apuntar la cuestión ante nos pues el error lesiona derechos sustanciales del acusado. *Pueblo* v. *del Valle*, 91 D.P.R. 174, 179 (1964).

2.—La instrucción objetada sobre la prueba de reputación fue la siguiente:

"En este caso, el acusado presentó prueba de su buena reputación. Quiero informarles que el acusado puede en apoyo de su defensa, introducir evidencia de la buena reputación de que goza en la comunidad en que vive, que se refiere a aquellos rasgos de su carácter envuelto en la ofensa que se le imputa. Es menos probable que una persona de buena reputación cometa un delito que aquella que no lo es. Sin embargo, no quieren

decir estos preceptos que de ustedes llegar a la conclusión de que el acusado es culpable de los hechos que se le imputan fuera de toda duda razonable, deban ustedes absolverlo por el hecho de que goce de buena reputación en la comunidad en que vive."

Es cierto que esta instrucción no se ajusta con absoluta precisión a la norma que establecimos en *Pueblo* v. *Negrón Vélez*, 96 D.P.R. 419 (1968), pues sólo cubre efectivamente el segundo aspecto de dicha norma, es decir, que la prueba de buena reputación se presenta con el propósito de crear una duda razonable. De su lenguaje, sin embargo, el jurado podía inferir que dicha prueba, considerada con el resto de la evidencia, podía crear una duda razonable y que la misma podía ser considerada independientemente de si el efecto del resto de la prueba admitida era claro o dudoso. De manera que no podemos concluir, como arguye el apelante, que esta instrucción le causó tal perjuicio que por ese solo motivo debemos revocar la sentencia en este caso.

*En vista de lo expuesto, debemos revocar la sentencia dictada en este caso y devolver el mismo para un nuevo juicio.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Blanco Lugo concurren en el resultado.